UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

  Plaintiff,         CASE NO. 3:25-cr-173-HES-PDB

BRINIO ADOLFO URENA,

  Defendant.
_____/

## SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE

  Defendant, BRINIO ADOLFO URENA, by and through undersigned counsel, and pursuant to the Federal Rules of Criminal Procedure, files this Sentencing Memorandum setting forth the factors the Court should consider in determining Mr. Urena's sentence, and respectfully states as follows:

**I.** **CASE HISTORY**

  The Pre-Sentence Investigation Report has been discussed with Mr. Urena and the only objection thereto has been noted with the Probation Officer.

  Mr. Urena now stands before this Honorable Court ready to be sentenced and respectfully submits the following information to assist the Court in imposing a sentence that is reasonable and just.

**II.** **THE APPLICABLE SENTENCING STANDARD**

Following *United States v. Booker*, 543 U.S. 220 (2005), sentencing now requires two steps. The Court should first calculate the applicable sentencing range under the Sentencing Guidelines. *Gall v. United States*, 128 S.Ct. 586, 596 (2007). The Court should then impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a). *United States v. Cavera*, 505 F.3d 216, 220 (2d Cir. 2007). A "reasonable" sentence is one that is "sufficient, but not greater than necessary, to comply with the purposes" of criminal punishment: retribution, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a); *see* also S. Rep. No. 98-225, at 75-76 (1983).

The United States Supreme Court has recognized that a guidelines sentence is not always appropriate. *Rita v. United States*, 127 S. Ct. 2456, 2468 (2007) (*citing Booker*, 543 U.S. at 259, 260)). Rather, courts should exercise "reasoned sentencing judgment" by making "an effort to filter the Guidelines' general advice through § 3553(a)'s list of factors." *Id*. In other words, the Court should ultimately derive a sentence based upon the factors of § 3553(a) "without any thumb on the scale favoring a guideline sentence." *United States v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir. 2007).

The Supreme Court ratified the holding of *Rita* and affirmed the wide discretion district courts have in determining sentences. In *Gall*, the Court held that sentencing judges "must make an individualized assessment" of the § 3553

factors and "may not presume that the Guidelines range is reasonable." *Id.* at 589. In holding that appellate courts may not apply a presumption of unreasonableness to sentences outside the guidelines range, the Court reasoned that the "sentencing judge is in a superior position to find facts and judge their import." *Id.* at 597.

### III. The Three-Level Aggravating Role Enhancement Under U.S.S.G. § 3B1.1(b) Should Not Apply

The Presentence Investigation Report applies a three-level aggravating role enhancement under U.S.S.G. § 3B1.1(b), concluding that Mr. Urena acted as a "manager or supervisor" in a conspiracy involving five or more participants. Respectfully, the factual record does not support that conclusion.

An enhancement under § 3B1.1(b) requires proof that the defendant exercised control, authority, or managerial responsibility over at least one other participant, not merely that the defendant played an active or knowing role in the offense. The Eleventh Circuit has repeatedly held that mere participation, facilitation, or association with more culpable actors is insufficient to establish a managerial or supervisory role.

Here, the undisputed facts show that Raymond Zumba was the architect and driving force of the scheme. Zumba explained the mechanics of the fraud, set payment terms, coordinated logistics, handled documentation, and interfaced

with participants regarding immigration filings and benefits. By contrast, Mr. Urena's conduct was limited and episodic. As defense counsel objected, Mr. Urena primarily provided contact information for potential participants, attended only a single wedding, took photographs at that event, and received compensation only in connection with one recruited participant. He did not design the scheme, control its proceeds, direct the actions of others, or exercise decision-making authority over any co-conspirator.

Critically, the record contains no evidence that Mr. Urena exercised authority over another participant, instructed others how to commit the offense, resolved disputes, or claimed a larger share of the profits. Those factors—explicitly identified in Application Note 4 to § 3B1.1—are absent here. Providing introductions, traveling to an event, or assisting another conspirator does not transform a participant into a manager or supervisor.

The probation office's concern that similarly situated defendants might otherwise receive comparable offense levels underscores why the enhancement should not apply. The Guidelines require individualized assessments of actual authority and control, not relative culpability in the abstract. If the enhancement is removed, the resulting guideline range—0 to 6 months after application of § 4C1.1—accurately reflects Mr. Urena's limited role and lack of managerial authority.

For these reasons, the Court should sustain the defense objection and decline to apply the § 3B1.1(b) enhancement.

## IV. <u>SENTENCING FACTORS UNDER 18 U.S.C. § 3553</u>

After determining an advisory guideline range, the Court should then consider the factors listed in 18 U.S.C. § 3553(a) and (b). Among those factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide for just punishment; (3) the need for deterrence; (4) the kinds of sentences available; and (5) the need to avoid unwanted sentencing disparities. *See United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005).

### The Nature and Circumstances of the Offense

This case involves a non-violent conspiracy offense with no identifiable individual victims. The PSR expressly recognizes that the only victim is "society at large". There was no allegation of force, threats, weapons, or physical harm. While the offense is serious, it is materially less severe than the vast majority of federal cases involving violence, narcotics trafficking, or financial exploitation.

Moreover, Mr. Urena's conduct occurred during a discrete and relatively brief period, and he did not profit substantially. He reported earning approximately $6,000 total, an amount inconsistent with leadership or

organizational control and reflective of a peripheral role rather than a directing one.

## History and Characteristics of the Defendant
## 18 U.S.C. § 3553(a)(1)

Mr. Urena's personal history is extraordinary and mitigating. He was raised in severe socioeconomic instability by a single parent suffering from schizophrenia, experienced chronic food insecurity, and effectively lacked consistent parental guidance throughout childhood. These conditions are thoroughly documented in the PSR and recognized by the probation office as relevant mitigation.

Despite these obstacles, Mr. Urena served honorably in the United States Navy for nearly eight years, achieved the rank of E-5, and was never disciplined or court-martialed. His military service reflects discipline, responsibility, and a demonstrated capacity for lawful and productive conduct.

Equally significant is Mr. Urena's documented mental-health history. He has been diagnosed with anxiety, depression, and adjustment disorder, and he suffered two suicide attempts during the time period surrounding the offense conduct. These events were not fabricated or post-hoc explanations; they resulted in hospitalization, ongoing psychiatric treatment, and prescribed medication, all of which continue today. His conduct must be understood within this context of acute psychological distress rather than greed or predatory intent.

## The Need for the Sentence to Promote Respect for the Law and Provide Just Punishment

A lengthy custodial sentence is not necessary to promote respect for the law in this case. Mr. Urena accepted responsibility at the earliest opportunity, pleaded guilty pursuant to a written plea agreement, expressed genuine remorse, and has fully complied with all conditions of pretrial supervision. The stigma of a federal felony conviction, combined with the collateral consequences he will endure, already constitutes substantial punishment.

A sentence below the advisory range would still reflect the seriousness of the offense without being greater than necessary.

## Deterrence and Protection of the Public

Specific deterrence is not a concern here. Mr. Urena has no criminal history, no pattern of unlawful behavior, and no risk of recidivism. The offense was situational, tied to personal instability and financial stress, and not indicative of future criminal conduct.

General deterrence can be achieved through a modest custodial sentence or alternative confinement. There is no evidence that additional incarceration would meaningfully enhance deterrence in immigration fraud cases, particularly where the defendant has already demonstrated rehabilitation and compliance.

## The Need for Rehabilitation

Mr. Urena's primary needs are mental-health treatment, stability, and the opportunity to rebuild his life. He is currently compliant with prescribed treatment, gainfully employed, and planning to pursue higher education using his GI Bill benefits. Prolonged incarceration would interrupt this progress and undermine, rather than promote, rehabilitation.

## CONCLUSION

Based on the factors set forth in 18 U.S.C. §§ 3553(a) and (b), Mr. Urena respectfully requests that the Court impose a sentence of time served, as such a sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing under § 3553(a). Mr. Urena further requests that the Court waive any fine and impose a term of supervised release at the minimum duration permitted by law.

Dated: January 15, 2026

Respectfully submitted,

KOTLER LAW, PLLC

*/s/ Yuli Kotler*
Yuli Kotler, Esq.
FL Bar No. 109505
P.O. Box 22411
St. Petersburg, FL 33742
(732) 690-3025
YK@KotlerLegal.com

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically to the following on the 15th day of January, 2026:

AUSA David B. Mesrobian
david.mesrobian@usdoj.gov

                                          Respectfully submitted,

                                          KOTLER LAW

                                          */s/ Yuli Kotler*
                                          Yuli Kotler, Esq.